1  Michael Brooks (SBN 272053)
2  Maria Bourn (SBN 269322)
   GOMERMAN, BOURN & ASSOCIATES
3  825 Van Ness Avenue, Suite 502
   San Francisco, CA 94109
4  Telephone:    (415) 545-8608
   Fax:          (855) 545-8608
5  Email:        maria@gobolaw.com
               michael@gobolaw.com
6
7  Attorneys for Plaintiff
   Bob Luong
8
                    UNITED STATES DISTRICT COURT
9
          NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION
10
11 | BOB K. LUONG, an individual,              | Case No.
12 |                          Plaintiff,       | **COMPLAINT FOR DAMAGES:**
13 |              v.                            | (1) Whistleblower Retaliation in Violation of
14 | SUPER MICRO COMPUTER, INC., a           |     the Sarbanes-Oxley Act of 2002 (18 U.S.C.
     Delaware corporation, and                 |     § 1514A);
15 | CHARLES LIANG, an individual,            |
                                               | (2) Whistleblower Retaliation in Violation of
16 |                          Defendants.      |     California Labor Code Section 1102.5; and
17 |                                            | (3) Retaliation in Violation of the FEHA.
18 |                                            | **DEMAND FOR JURY TRIAL**
19

20     Plaintiff BOB K. LUONG ("Plaintiff") alleges against SUPER MICRO COMPUTER,

21 INC. and CHARLES LIANG (collectively, "Defendants"), and each of them, as follows:

22                              **INTRODUCTION**

23     1.     Defendants retaliated against and ultimately fired Plaintiff because he engaged in

24 protected activity by: (i) reporting that Defendants were engaging in misleading accounting

25 practices that he reasonable believed to violate the rules and regulations of the Securities and

26 Exchange Commission ("SEC"); (ii) reporting that his supervisor engaged in unlawful age

27 discrimination; and (iii) refusing to acquiesce in Defendants' unlawful activity. Defendants'

28 retaliation against Plaintiff for engaging in protected activity violates the Sarbanes-Oxley Act of

                                        1

2002 ("SOX"), California Labor Code section 1102.5, and the California Fair Employment and Housing Act ("FEHA").

**THE PARTIES**

2.      Plaintiff is an individual who resides within Santa Clara County, California.

3.      Defendant SUPER MICRO COMPUTER, INC. ("Super Micro") is a Delaware corporation company with its principal office located at 980 Rock Avenue, San Jose, California 95131. Super Micro is a public company with a class of securities registered under section 12 of the Securities Exchange Act of 1934 (15 U.S.C. 78l).

4.      Defendant CHARLES LIANG ("CEO Liang") is an individual who, on information and belief, resides in California. CEO Liang is, and at all relevant times has been, employed by Super Micro and has been its Chief Executive Officer.

5.      Each of the Defendants was in some manner responsible for the acts and damages alleged herein, or is indebted to Plaintiff as alleged herein, and each defendant participated in the acts alleged herein and, in participating in such acts, each defendant was the agent and co-conspirator of each other defendant and was acting in the course and scope of such agency and conspiracy.

**JURISDICTION**

6.      The Court has jurisdiction over Plaintiff's SOX whistleblower retaliation claim under 18 U.S.C. § 1514A(b)(1)(B). The Court also has federal question jurisdiction over the claim under 28 U.S.C. § 1331.

7.      The Court has supplemental jurisdiction over Plaintiff's whistleblower retaliation claim in violation of California Labor Code section 1102.5 under 28 U.S.C. § 1367 because the claim is so related to Plaintiff's SOX whistleblower retaliation claim that the claims form part of the same case or controversy under Article III of the United States Constitution.

8.      The Court has supplemental jurisdiction over Plaintiff's FEHA retaliation claim under 28 U.S.C. § 1367 because the claim is so related to Plaintiff's SOX whistleblower retaliation claim that the claims form part of the same case or controversy under Article III of the United States Constitution.

**VENUE**

9.      Venue is proper in the Northern District of California under 28 U.S.C § 1391 because: (i) one or more of the Defendants reside within the Northern District of California and Defendants are all residents of the State of California; and (ii) a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the Northern District of California.

10.     Intra-district assignment to the San Jose Division is proper under Local Rule 3-2(e) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Santa Clara County.

**STATEMENT OF FACTS**

11.     Super Micro hired Plaintiff in 2012 as Director, Technology Enabler.

12.     In 2015, Super Micro elevated Plaintiff to the position of Senior Director, Technology Enabler and then to General Manager, Service and Strategic Solutions. As General Manager, Plaintiff was responsible for providing thought leadership and strategic guidance for Super Micro's Global Service team.

13.     Super Micro manufactures and sells high-performance and high-efficiency servers, server management software, and storage systems for various markets, including enterprise data centers, cloud computing, artificial intelligence, 5G and edge computing.

14.     Through its Global Service team, Super Micro provides post-sale maintenance and other support services to purchasers of its equipment and solutions.

15.     Super Micro and CEO Liang have a documented history of prematurely recognizing revenue and understating expenses in violation of Generally Accepted Accounting Principles ("GAAP") and the antifraud, books and records, and internal accounting controls provisions of the federal securities laws and regulations.

16.     On August 25, 2020, the Securities and Exchange Commission ("SEC") issued cease and desist orders against Super Micro and CEO Liang prohibiting them from continuing to violate certain securities laws and SEC rules and imposing significant monetary sanctions. *See* Exhibit 1 (Super Micro Order) and Exhibit 2 (CEO Liang Order).

COMPLAINT

17.     On information and belief, while addressing its past fraudulent accounting activity, Super Micro terminated several employees associated with its unlawful activities, including SVP of Sales Phideas Chou, SVP of Marketing Tau Leng, VP of Sales Gloria Sun, VP of Sales Salim Fidel, VP of Sales Nelson Wang, VP of Finance Peggy Lin, and others. In addition, Director Wally Liaw resigned from the board and his SVP of Sales role.

18.     Though Super Micro and CEO Liang appeared to curtail its unlawful activities for a brief period during and following the SEC enforcement action and were able to get the company relisted on the NASDAQ in January 2020, by the end of 2020, just weeks after the SEC cease and desist orders were issued, Defendants began again engaging in various accounting schemes—*e.g.*, improper revenue recognition, circumvention of internal accounting controls, shipping product with known issues, and providing service support to customers without service — to unlawfully overstate revenue and/or shift revenue between business units.

19.     Plaintiff resisted and, in some instances, refused to go along with Defendants' schemes because he reasonably believed the schemes violated GAAP and SEC accounting rules.

20.     **Improper Revenue Recognition**. On information and belief, Defendants improperly recognized revenue for equipment sales to multiple large customers in Q2[1] of 2020.

21.     **Recognizing Incomplete Sales**. One method Defendants utilized to recognize revenue early was to recognize sales that had not been completed. Despite knowing that certain sales would not be completed in Q2—*i.e.*, that the equipment would not be delivered, installed, and/or function in Q2 in accordance with applicable contract obligations—Super Micro nevertheless recognized the revenue associated with the sales in Q2 rather than Q3 of 2020 or later when its contractual obligations had been satisfied.

22.     **Shipping Product with Known Issues**. Another method Defendants utilized to recognize revenue early was to ship and bill certain customers for incomplete equipment that was not ready for sale, including equipment lacking key components necessary to its operation that

---

[1] Super Micro utilizes a July 1 to June 30 fiscal year (Q1 runs July through September; Q2 runs October through December; Q3 runs January through March; and Q4 runs April through June).

COMPLAINT

could not be shipped and/or installed until later quarters and equipment with key components (e.g., pre-release processors) that Super Micro was not authorized to resell.

23.    **Circumvention of Internal Accounting Controls**. Beginning in Q2 of 2020, many of the management personnel changes that had resulted from the SEC enforcement action and guidance from external auditors began to erode. During 2020, Sara Liu, CEO Liang's wife, returned to an active management role within the company. On information and belief, she had previously relinquished her management role to appease the external auditors.  In January 2021, Super Micro Chief Financial Officer ("CFO") Kevin Bauer resigned, and David Wiegand became CFO. Mr. Weigand was also performing the role of Chief Compliance Officer ("CCO") at the time. The combined roles consolidated power and further eroded internal controls.

24.    Beginning in approximately March 2021, Defendants also began to rehire employees associated with the prior unlawful accounting actions. Peggy Lin ("CAO Lin") was brought back and quickly ascended to the role of Chief Administrative Officer. On information and belief, CAO Lin, Sara Liu, and Edmond Liu (Sara's brother) actively negotiated with Compuware and Compuware CEO Bill Liang, CEO Liang's brother, to delay vendor payment and adjust other terms of sale while still allowing early recognition of revenue irrespective of delay in vendor payments.

25.    Other examples of eroding internal controls included: (i) assigning product manager to act as service manager; (ii) approving service contracts in circumvention of existing approval process and controls; and (iii) refusing to allow personnel to revalue inventory to write off obsolete and missing equipment.

26.    **Shifting Revenue between Business Units.** Without justification, Defendants disregarded the company's prior accounting practices regarding the allocation of revenue between service and hardware—practices that were adopted in accordance with GAAP and validated by CFO Kevin Bauer and external auditors in the context of the SEC enforcement action—and began allocating a larger amount of revenue to the hardware business to make that business line appear more profitable. For example, beginning January 1, 2022, Super Micro made an accounting change with respect to revenue received from its top four customers. It significantly reduced the

allocation of overall revenue attributed to service from approximately 7 percent of revenue to approximately 1.4 percent of revenue for these four customers only. Defendants justified this change with the dubious explanation that the four customers did not need as much service as other customers.

27.     In December 2020, Plaintiff reported to Kenneth Cheung (controller overseeing revenue recognition) that Jenny Lau (Mr. Chueng's subordinate) had incorrectly allocated more than $10 million dollars of revenue to hardware sales rather than service, which misleadingly overstated the profitability margin associated with the hardware sales.

28.     In December 2020 and January 2021, Plaintiff reported his concerns regarding revenue recognition and revenue allocation to CFO Kevin Bauer who in turn met with CEO Liang to discuss Plaintiff's concerns.

29.     In May 2021, Plaintiff met with Super Micro's human resources personnel ("HR") on several occasions and reported that individuals directly responsible for many of the violations found by the SEC were being rehired.

30.     In January 2022, Plaintiff was asked to approve the accounting change with respect to revenue received from its top four customers but refused to do so because of his concerns that the change violated SEC accounting rules.

31.     On February 9, 2022, Plaintiff reported to CEO Liang, HR, and his manager, Henry Kung, that Mr. Kung had made discriminatory comments based on age during the hiring of an employee that Plaintiff supervised. Plaintiff reported this information after becoming aware that employee had reported to HR that Mr. Kung was harassing and threatening to fire him if he escalated a product quality issue.

32.     On March 8, 2022, Plaintiff filed an internal complaint with Super Micro formalizing the concerns he had been raising with HR and other management since 2021 regarding the hiring of employees who had engaged in prior unlawful activity. The complaint also reported retaliation against Plaintiff and the Global Service team.  Plaintiff also filed a complaint with Ethicspoint raising similar issues at approximately the same time.

33.     During March and April 2022, Plaintiff continued to inform Mr. Kung and accounting staff about what he believed to be unlawful departures from proper accounting practices.

34.     After Plaintiff's 2022 complaints, the retaliation against him and his staff intensified. Plaintiff's variable compensation continued to decline even as revenue continued to increase. Plaintiff's attempts to onboard new staff were disapproved of by Mr. Kung. Resource requests and other types of routine requests for approvals sent to Mr. Kung were ignored or delayed for weeks.  Mr. Kung and his staff were openly hostile in communications with Plaintiff and his staff. In June 2022, Mr. Kung unreasonably refused to provide Plaintiff's team with access to an integral company database called PDBS impeding the ability of Plaintiff and his team to service Super Micro's customers.

35.     In October 2022, Super Micro's legal department requested a meeting with Plaintiff to discuss an HR item. Plaintiff requested but was not provided with a more specific topic of discussion for the meeting by the legal department. Plaintiff asked the Chief Compliance Officer to also attend the meeting and that request was rejected by the legal department. Plaintiff made himself available to meet by phone or in his office. The legal department refused.

36.     On October 14, 2022, Super Micro placed Plaintiff on involuntary paid administrative leave.

37.     On December 16, 2022, Super Micro placed Plaintiff on involuntary unpaid administrative leave.

38.     On April 12, 2023, Super Micro terminated Plaintiff's employment.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

39.     On April 15, 2023, Plaintiff, though counsel, timely submitted his administrative SOX Whistleblower Retaliation Complaint to the Occupational Safety and Health Administration ("OSHA") via facsimile within the 180-day statute of limitation period as required under 18 U.S.C. § 1514A(b)(2)(D) and 29 C.F.R. § 1980.103.

40.     More than 180 days have now passed since Plaintiff's administrative SOX Whistleblower Retaliation Complaint was filed. No action has been taken on the complaint by

OSHA or any other designee of the Secretary of Labor and no final decision has been rendered. Thus, Plaintiff has exhausted administrative remedies for his SOX Whistleblower Retaliation Complaint and may seek relief in this Court under 18 U.S.C. § 1514A(b)(1)(B).

41.    Under California Labor Code section 244, Plaintiff is not required to exhaust administrative remedies prior to bringing a civil action for a violation of California Labor Code section 1102.5.

42.    On or about April 3, 2024, by and through counsel, Plaintiff filed an administrative complaint against Super Micro alleging retaliation in violation of the Fair Employment and Housing Act ("FEHA") with the California Civil Rights Department and obtained an immediate right to sue notice.

**CLAIMS**

**<u>First Cause of Action</u>**
**SOX WHISTLEBLOWER RETALIATION**
**(18 U.S.C. § 1514A)**
(Against All Defendants)

43.    Plaintiff re-alleges and incorporates by reference the foregoing allegations as though set forth herein.

44.    Plaintiff engaged in whistleblowing activity protected by SOX by reporting that Defendants were engaging in misleading accounting practices—*i.e.*, improperly recognizing revenue early, improperly shifting revenue between business units, and improperly eroding internal accounting controls—that he reasonable believed to violate GAAP and SEC rules and regulations.

45.    Plaintiff also engaged in whistleblowing activity protected by SOX by resisting and refusing to acquiesce in misleading accounting practices he reasonably believed violated GAAP and SEC accounting rules.

46.    Defendants knew that Plaintiff engaged in protected activity.

47.    Plaintiff suffered an adverse employment action, including but not limited to being involuntarily placed on administrative leave and then fired ("the adverse employment action").

48.    Plaintiff's protected activity was a contributing factor in the adverse employment

action.

49.     As a direct and proximate result of the adverse employment action, Plaintiff has and continues to suffer lost wages and other benefits of employment and is therefore entitled to an award of compensatory damages against Defendants for said suffering, inclusive of prejudgment interest, in an amount to be proven at trial.

50.     As a direct and proximate result of Defendants adverse employment action, Plaintiff has and continues to suffer emotional distress, suffering, grief, sadness, worry, shock, humiliation, frustration, anguish, and nervousness and is therefore entitled to an award of compensatory damages against Defendants for said suffering in an amount to be proven at trial.

51.     Plaintiff is further entitled to reinstatement of his employment with Defendants.

52.     Plaintiff is further entitled to an award against Defendants for his litigation costs, reasonable attorney's fees, and expert witness fees.

**<u>Second Cause of Action</u>**
**LABOR CODE SECTION 1102.5 WHISTLEBLOWER RETALIATION**
(Against Super Micro)

53.     Plaintiff re-alleges and incorporates by reference the foregoing allegations as though set forth herein.

54.     Super Micro was Plaintiff's employer.

55.     Plaintiff engaged in whistleblowing activity protected by Labor Code section 1102.5, subdivision (b), by: (i) reporting unlawful activity he reasonably believed violated GAAP and SEC accounting rules to agents of Super Micro with authority over Plaintiff and/or with authority to investigate, discover, or correct the legal violations complained about; and (ii) reporting that his supervisor, Mr. Kung, had engaged in age discrimination in violation of the FEHA to agents of Super Micro with authority over Plaintiff and/or with authority to investigate, discover, or correct the legal violations complained about.

56.     Plaintiff engaged in whistleblowing activity protected by Labor Code section 1102.5, subdivision (c), by: (ii) resisting and refusing to participate in activity that would violate GAAP and SEC accounting rules.

57.     Plaintiff had reasonable cause to believe that the information he provided to Super Micro (and agents of Super Micro with authority over Plaintiff and/or with authority to investigate, discover, or correct the legal violations complained about) disclosed violations of the GAAP, SEC accounting rules, and FEHA.

58.     Super Micro discharged Plaintiff from employment and otherwise discriminated against him in the terms, conditions, and privileges of employment.

59.     Plaintiff's protected activity was a substantial motivating reason for Super Micro's decision to take adverse actions against him and discharge him from employment.

60.     As a direct and proximate result of Super Micro's adverse employment actions against him, Plaintiff has and continues to suffer lost wages and other benefits of employment and is therefore entitled to an award of compensatory damages against Super Micro for said suffering, inclusive of prejudgment interest, in an amount to be proven at trial.

61.     As a direct and proximate result of Super Micro's adverse employment actions against him, Plaintiff has and continues to suffer emotional distress, suffering, grief, sadness, worry, shock, humiliation, frustration, anguish, and nervousness and is therefore entitled to an award of compensatory damages against Super Micro for said suffering in an amount to be proven at trial.

62.     Plaintiff is further entitled to reinstatement of his employment with Super Micro.

63.     Plaintiff is further entitled to an award of exemplary and punitive damages in an amount to be proven at trial because the retaliation against Plaintiff constitutes oppression, fraud or malice. On information and belief: (i) the above-described acts were willful, intentional, and malicious and done with the intent to vex, injure, and annoy Plaintiff and warrant the imposition of exemplary and punitive damages in an amount sufficient to punish Super Micro and to deter others from engaging in similar conduct; and (ii) Super Micro authorized and ratified the wrongful acts of its agents and employees, knew in advance that its agents and employees were likely to commit such acts and employed them with conscious disregard of the rights or safety of others. Further, on information and belief: One or more of Super Micro's officers, directors, or managing agents who was acting on behalf of Super Micro: (i) were themselves guilty of

oppression, fraud, and malice; (ii) had advance knowledge of the unfitness of Super Micro's employees or agents who retaliated against Plaintiff and employed them with a knowing disregard for the rights and safety of others, authorized their conduct, or knew of their conduct and adopted or approved of the conduct after it occurred; or (iii) adopted or approved of the retaliatory conduct against Plaintiff after they became aware of the conduct regardless of the identity of the employees or agents responsible for the conduct.

64.    Plaintiff is further entitled to an award against Super Micro for costs of suit, including his reasonable attorney's fees.

## THIRD CAUSE OF ACTION
### FEHA RETALIATION
### [Cal. Gov. Code, § 12940, subd. (h)]
(Against Super Micro)

65.    Plaintiff re-alleges and incorporates by reference the foregoing allegations as though set forth herein.

66.    Plaintiff engaged in activity protected under the FEHA by reporting that his supervisor, Mr. Kung, had engaged in age discrimination in violation of the FEHA to agents of Super Micro with authority over Plaintiff and/or with authority to investigate, discover, or correct the legal violations complained about.

67.    Super Micro discharged Plaintiff from employment and otherwise discriminated against him in the terms, conditions, and privileges of employment.

68.    Plaintiff's protected activity was a substantial motivating reason for Super Micro's decision to take adverse actions against him and discharge him from employment.

69.    As a direct and proximate result of Super Micro's adverse employment actions against him, Plaintiff has and continues to suffer lost wages and other benefits of employment and is therefore entitled to an award of compensatory damages against Super Micro for said suffering, inclusive of prejudgment interest, in an amount to be proven at trial.

70.    As a direct and proximate result of Super Micro's adverse employment actions against him, Plaintiff has and continues to suffer emotional distress, suffering, grief, sadness, worry, shock, humiliation, frustration, anguish, and nervousness and is therefore entitled to an

COMPLAINT

award of compensatory damages against Super Micro for said suffering in an amount to be proven at trial.

71.     Plaintiff is further entitled to reinstatement of his employment with Super Micro.

72.     Plaintiff is further entitled to an award of exemplary and punitive damages in an amount to be proven at trial because the retaliation against Plaintiff constitutes oppression, fraud or malice. On information and belief: (i) the above-described acts were willful, intentional, and malicious and done with the intent to vex, injure, and annoy Plaintiff and warrant the imposition of exemplary and punitive damages in an amount sufficient to punish Super Micro and to deter others from engaging in similar conduct; and (ii) Super Micro authorized and ratified the wrongful acts of its agents and employees, knew in advance that its agents and employees were likely to commit such acts and employed them with conscious disregard of the rights or safety of others. Further, on information and belief: One or more of Super Micro's officers, directors, or managing agents who was acting on behalf of Super Micro: (i) were themselves guilty of oppression, fraud, and malice; (ii) had advance knowledge of the unfitness of Super Micro's employees or agents who retaliated against Plaintiff and employed them with a knowing disregard for the rights and safety of others, authorized their conduct, or knew of their conduct and adopted or approved of the conduct after it occurred; or (iii) adopted or approved of the retaliatory conduct against Plaintiff after they became aware of the conduct regardless of the identity of the employees or agents responsible for the conduct.

73.     Plaintiff is further entitled to an award against Super Micro for costs of suit, including his reasonable attorney's fees and expert witness fees.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff hereby prays that the Court enter judgment in his favor and against Defendants, and each of them, as follows:

A.     Compensatory damages according to proof;

B.     General damages according to proof;

C.     Special damages according to proof;

D.     Statutory damages;

E.      Punitive damages;

F.      Prejudgment interest according to law;

G.      Costs of suit, including reasonable attorney's fees and expert witness fees as authorized by statute;

H.      Equitable relief, including injunctive relief and declaratory relief; and

I.      Any other and further relief that the Court considers just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial by jury on all issues.

DATED: April 24, 2024                    GOMERMAN, BOURN & ASSOCIATES


By: _____
      Michael Brooks
      Attorneys for Plaintiff

COMPLAINT