# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| BOB K. LUONG,<br><br>    Plaintiff,<br><br>    v.<br><br>SUPER MICRO COMPUTER, INC., a Delaware corporation, and CHARLES LIANG,<br><br>    Defendants. | Case No. 24-cv-02440-BLF<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY ACTION**<br><br>[Re: ECF 17] |

Plaintiff Bob K. Luong ("Luong") alleges that his former employer, Defendant Super Micro Computer, Inc. ("SMCI"), and its CEO, Defendant Charles Liang "Liang"), unlawfully retaliated against him for reporting their misleading accounting practices and other misconduct. The operative first amended complaint ("FAC") asserts claims for (1) whistleblower retaliation under the Sarbanes-Oxley Act of 2002 ("SOX"), 18 U.S.C. § 1514A; (2) whistleblower retaliation in violation of California Labor Code § 1102.5; and (3) retaliation in violation of California's Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12940(h). *See* FAC, ECF 6.

Defendants move to compel arbitration of the two state law claims and to stay this action, including the non-arbitrable SOX claim,[1] until arbitration of the state law claims is completed. *See* Defs.' Mot., ECF 17. Plaintiff Luong opposes both the motion to arbitrate and the motion to stay the SOX claim.

Defendants' motion to compel arbitration and stay the action is GRANTED for the reasons discussed below.

---

[1] The SOX claim cannot be compelled to arbitration in light of the statute's anti-arbitration provision codified at 18 U.S.C. § 1514A(e)(2).

## I. BACKGROUND

SMCI is a publicly traded company that manufactures computer server, storage, and networking solutions, and provides system management software. *See* Chan Decl. ¶ 2, ECF 17-2. SMCI is headquartered in San Jose, California, and operates production facilities in California, Taiwan, and the Netherlands. *See id.*

*Offer Letter*

On December 19, 2012, SMCI extended a written offer of employment to Luong for the position of Director, Technology Enabler, in its San Jose facility. *See* Chan Decl. Ex. 1 (Offer Letter). The offer letter indicated that Luong's starting compensation would be $170,000, and that Luong would be granted stock options and eligibility to participate in employment benefits plans. *See id.* The offer letter stated expressly that employment was contingent on Luong "signing all required employment documents, including the Employee Acknowledgment and Agreements form (which includes an At Will Employment Agreement, Confidentiality and Information Systems Agreement and *an Arbitration Agreement*) and our Employee Confidential Information, Non-Solicitation And Inventions Agreement." *Id.* (italics added). Luong was directed to indicate his acceptance of the offer by signing and returning the offer letter by December 26, 2012. *See id.* Luong actually signed the offer letter on December 28, 2012. *See* Chan Decl. ¶ 3 & Ex. 1 (Offer Letter).

*Employee Acknowledgement Form*

Luong also signed a one-page Employee Acknowledgement Form on December 28, 2012, acknowledging that: he received SMCI's Employee Handbook and was given an opportunity to read it; his employment was at will and he was bound by SMCI's Information Systems policy and Confidential Information policy; and he agreed to final and binding arbitration of disputes with SMCI as a condition of his employment. *See* Chan Decl. ¶ 5 & Ex. 2 (Employee Acknowledgement Form). The arbitration agreement takes up the bottom third of the one-page form, reading as follows:

1    Arbitration Agreement

2    As a condition of accepting and/or continuing employment with the Company, I
     agree to final and binding arbitration of Disputes between me and the Company, in
3    accordance with the Arbitration of Disputes policy, the terms of which are
     incorporated by reference herein. I understand and agree that the Arbitration of
4    Disputes policy (the terms of which control in the event of a conflict) requires
     arbitration of all Disputes which involve the violation of my rights or the
5    Company's rights arising from my employment or the termination of my
     employment, including but not limited to violations of rights arising from
6    employment discrimination and/or wrongful termination of employment, breach of
     contract or other wrongful conduct, or breach of the Company's policies, rights or
7    contracts respecting confidential information and/or trade secrets. I understand and
     agree that my agreement to arbitrate Disputes means that I have voluntarily
8    surrendered my rights to civil litigation and a trial by jury and any associated rights
     of appeal.

10   Chan Decl. Ex. 2 (Employee Acknowledgement Form).  Plaintiff's signature appears immediately

11   below this language.  *See id.*

12   *Arbitration of Disputes Policy*

13   The Arbitration of Disputes policy ("Policy") referred to by and incorporated into the

14   Employee Acknowledgement Form is contained in the SMCI employee handbook. *See* Chan

15   Decl. ¶ 6. The Policy, comprising 5 pages of the handbook, provides in relevant part that "[a]ll

16   employees are required to agree to arbitrate Disputes (as described below) as a condition of

17   employment" with SMCI.  Chan Decl. Ex. 3 (Policy).  "Covered Disputes" are defined to include

18   "any complaint that there has been a violation" of the employee's rights by SMCI or its officers,

19   employees, or agents. *Id*.  The Policy describes the procedure for requesting arbitration, and states

20   that "[a]ll questions concerning arbitrability, including but not limited to whether a party has an

21   obligation to arbitrate a Dispute . . . shall be decided by a court not an arbitrator." *Id*.  The

22   employee "will not be responsible for any part of the arbitrator's fees and costs." *Id*.  The last

23   paragraph of the policy, written in all capital letters and bolded, states:

24   **YOU UNDERSTAND THAT, BY ACCEPTING EMPLOYMENT AND/OR
     CONTINUING YOUR EMPLOYMENT WITH THE COMPANY, YOU
25   AGREE TO EXCLUSIVE, FINAL AND BINDING ARBITRATION OF ANY
     COVERED DISPUTES BETWEEN YOU AND THE COMPANY IN
26   ACCORDANCE WITH THE TERMS AND CONDITIONS OF THIS
     POLICY, AND YOU VOLUNTARILY AGREE TO SURRENDER YOUR
27   RIGHTS TO CIVIL LITIGATION AND A TRIAL BY JURY AND ANY
     ASSOCIATED RIGHTS OF APPEAL.**

28

3

*Id.*

*Present Lawsuit and Present Motion*

Luong filed the present lawsuit against SMCI and Liang on April 24, 2024, and filed the operative FAC on May 6, 2024, asserting claims for retaliation under SOX, California Labor Code § 1102.5, and FEHA. *See* Compl., ECF 1; FAC, ECF 6. Defendants requested that Luong agree to arbitrate his state law claims pursuant to the parties' written arbitration agreement, but Luong refused. *See* Jordan Decl. ¶¶ 2-3. Defendants thereafter filed the present motion to compel arbitration of the state claim claims (Claims 2 and 3) and to stay this action, including the non-arbitrable SOX claim (Claim 1), pending completion of arbitration.

**II.    LEGAL STANDARD**

The Federal Arbitration Act ("FAA") embodies a "national policy favoring arbitration and a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 345-46 (2011) (internal quotation marks and citations omitted). "The FAA, 9 U.S.C. § 1 *et seq.*, requires federal district courts to stay judicial proceedings and compel arbitration of claims covered by a written and enforceable arbitration agreement." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014).

"Generally, in deciding whether to compel arbitration, a court must determine two 'gateway' issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). The first of these issues is non-delegable and must be decided by the district court. *See Ahlstrom v. DHI Mortg. Co., Ltd., L.P.*, 21 F.4th 631, 635 (9th Cir. 2021) ("[P]arties cannot delegate issues of formation to the arbitrator."). The second issue is presumptively reserved for the court, but the parties may agree to delegate it to the arbitrator. *See id.* at 634; *see also Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*, 862 F.3d 981, 985 (9th Cir. 2017) ("[W]hether an arbitration clause in a concededly binding contract applies to a given controversy" is "presumptively reserved for the court" unless the parties clearly and unmistakably delegate that issue to the arbitrator).

4

### III. DISCUSSION

As noted above, Luong asserts a single federal claim for retaliation under SOX (Claim 1) and two state law claims for retaliation under California Labor Code § 1102.5 and FEHA (Claims 2 and 3). The SOX claim is asserted against both SMCI and Liang. However, the parties agree that the SOX claim cannot be compelled to arbitration. *See* 18 U.S.C. § 1514A(e)(2) ("No predispute arbitration provision shall be valid or enforceable, if the agreement requires arbitration of a dispute arising under this section."). The state law claims are asserted against only SMCI. Defendants move to compel arbitration of the state law claims, arguing that Luong and SMCI entered into an arbitration agreement that is governed by the FAA, the arbitration agreement is enforceable, and the state law claims fall within the scope of the arbitration agreement. Defendants move to stay this litigation, including the SOX claim, pending arbitration of the state law claims.

Luong does not dispute that the asserted arbitration agreement is governed by the FAA, as "[e]mployment contracts, except for those covering workers engaged in transportation, are covered by the FAA." *See E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002). Nor does Luong dispute that his state law claims fall within the scope of the asserted arbitration agreement. However, he contends that the arbitration agreement is unenforceable on the grounds that it is unconscionable and that it violates SOX. He further contends that even if the Court grants Defendants' motion to compel arbitration of the state law claims, the Court should deny Defendants' motion to stay with respect to the SOX claim and instead allow the SOX claim to proceed in this Court.

#### A. Luong and SMCI Entered into an Arbitration Agreement

In determining whether an arbitration agreement exists, a district court applies "ordinary state-law principles that govern the formation of contracts.'" *Reichert v. Rapid Invs., Inc.*, 56 F.4th 1220, 1227 (9th Cir. 2022) (internal quotation marks and citation omitted). Under California law, an arbitration agreement generally must be memorialized in writing. *See Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012). "A party's acceptance of an agreement to arbitrate may be express, as where a party signs the agreement," or the party's

5

acceptance may be implied in fact. *Id*. "An arbitration clause within a contract may be binding on a party even if the party never actually read the clause." *Id*. "The party seeking arbitration bears the burden of proving the existence of an arbitration agreement, and the party opposing arbitration bears the burden of proving any defense, such as unconscionability." *Id*.

SMCI submits the following documents: a copy of the offer letter signed by Luong, acknowledging that his offer of employment was contingent on his signing all required employment documents, including documents containing an arbitration agreement, *see* Chan Decl. ¶ 3 & Ex. 1 (Offer Letter); a copy of the Employee Acknowledgement Form signed by Luong, expressly agreeing to final and binding arbitration of disputes with SMCI as a condition of his employment, *see* Chan Decl. ¶ 5 & Ex. 2 (Employee Acknowledgement Form); and a copy of the Arbitration of Disputes policy contained in the employee handbook and incorporated into the Employee Acknowledgement Form, Chan Decl. Ex. 3 (Policy). This evidence satisfies Defendants' burden to prove the existence of an arbitration agreement between Luong and SMCI.

Luong does not dispute signing the offer letter or Employee Acknowledgement Form. He submits a declaration statement that he "was not provided with the employee handbook containing the Arbitration of Disputes Policy referenced in the purported arbitration agreement and was not aware of the terms contained therein prior to signing the purported arbitration agreement." Luong Decl. ¶ 4, ECF 23-1. This statement is insufficient to undermine Defendants' showing that the parties entered into an arbitration agreement, as the Employee Acknowledgement Form signed by Luong states expressly that Luong did receive the Arbitration of Disputes policy and agreed to be bound by it. *See Pinnacle*, 55 Cal. 4th at 236 ("An arbitration clause within a contract may be binding on a party even if the party never actually read the clause."); *see also Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 915 (2015) (rejecting argument that plaintiff did not read arbitration clause, observing that "it is generally unreasonable . . . to neglect to read a written contract before signing it").

**B.     The Arbitration Agreement is Enforceable**

If the party seeking arbitration meets its burden to prove the existence of an arbitration agreement, the party opposing arbitration bears the burden to prove any defense. *See Pinnacle*, 55

6

Cal. 4th at 236. Luong argues that the arbitration agreement is unenforceable because it is unconscionable and because it violates SOX. Neither argument is meritorious.

### 1. Unconscionability

"[G]enerally applicable contract defenses, such as . . . unconscionability, may be applied to invalidate arbitration agreements without contravening the FAA or California law." *OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 125 (2019) (internal quotation marks and citation omitted, alterations in original). "Both procedural and substantive unconscionability must be shown for the defense to be established[.]" *Id*. "The procedural element addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power." *Id*. (internal quotation marks and citation omitted). "Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided." *Id*. (internal quotation marks and citation omitted). "The burden of proving unconscionability rests upon the party asserting it." *Id*. at 126.

Luong asserts that the procedural unconscionability requirement is met because he was required to sign the Employee Acknowledgement Form containing the arbitration agreement as a condition of employment, and because the Arbitration of Disputes policy was "buried" in the employee handbook and "merely incorporated by reference" into the Employee Acknowledgement Form. Taking those arguments in reverse order, the Court finds Luong's characterization of the arbitration policy as "buried" in the employee handbook to be inaccurate. The policy is 5 pages in length, contains subheadings that make its various provisions easy to access, and concludes with a bolded paragraph written in all capital letters that unequivocally provides for binding arbitration. The 1-page Employee Acknowledgement Form calls out the key aspects of the arbitration agreement, specifically that it is a condition of employment and encompasses all disputes arising out of employment or termination of employment. Given Luong's signature on the 1-page Employee Acknowledgement Form directly above the paragraph addressing arbitration, his assertion that he did not have notice of that term of employment is wholly unpersuasive.

Moreover, that fact that the arbitration agreement was a condition of employment does not render it procedurally unconscionable. "Arbitration contracts imposed as a condition of

7

1   employment are typically adhesive." *OTO*, 8 Cal. 5th at 126. "The pertinent question, then, is
2   whether circumstances of the contract's formation created such oppression or surprise that closer
3   scrutiny of its overall fairness is required." *Id*. "The circumstances relevant to establishing
4   oppression include, but are not limited to (1) the amount of time the party is given to consider the
5   proposed contract; (2) the amount and type of pressure exerted on the party to sign the proposed
6   contract; (3) the length of the proposed contract and the length and complexity of the challenged
7   provision; (4) the education and experience of the party; and (5) whether the party's review of the
8   proposed contract was aided by an attorney." *Id*. at 126-27. Luong had more than a week
9   between the date the offer of employment was extended, December 19, 2012, and the date he
10  accepted, December 28, 2012. There is no evidence that any pressure was exerted on him to sign
11  the offer letter and Employee Acknowledgement Form. The offer letter is 2 pages in length and
12  the Employee Acknowledgement Form containing the arbitration agreement is 1 page in length.
13  Luong is an educated, sophisticated individual who accepted a position with a base salary of
14  $170,000. It is unclear whether Luong engaged an attorney to help him review the proposed
15  contract, but he certainly had the opportunity to do so. Based on this record, the Court finds that
16  Luong has failed to carry his burden of proving procedural unconscionability.

17  Nor has Luong proved substantive unconscionability. "In evaluating substantive
18  unconscionability, courts often look to whether the arbitration agreement meets certain minimum
19  levels of fairness." *Murrey v. Superior Ct.*, 87 Cal. App. 5th 1223, 1247-48 (2023). "[A]t a
20  minimum, a mandatory employment arbitration agreement must (1) provide for neutral arbitrators,
21  (2) provide for more than minimal discovery, (3) require a written award that permits limited
22  judicial review, (4) provide for all of the types of relief that would otherwise be available in court,
23  and (5) require the employer to pay the arbitrator's fees and all costs unique to arbitration." *Id*.
24  (citation omitted). Luong argues that the arbitration agreement at issue here does not provide for
25  adequate discovery and may require him to pay costs unique to arbitration, such as Defendants'
26  costs incurred in responding to his discovery requests and administrative and facility fees. The
27  California Supreme Court has rejected the notion that an arbitration agreement is unconscionable
28  merely because it grants the arbitrator discretion over what discovery may be taken. *See*

8

*Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 105 & n.10 (2000). With respect to the costs of arbitration, the Arbitration of Disputes policy states that the employee "will not be responsible for any part of the arbitrator's fees and costs." Chan Decl. Ex. 3 (Policy). The policy does require that each side pay its own discovery costs, as is customary in litigation. *See id.* The Court does not read the policy to require Luong to pay Defendants' costs in responding to discovery requests, or any costs that are unique to arbitration, and Luong has not pointed to any provision of the policy clearly imposing such costs on him.

The reliance Luong places on *Ronderos v. USF Reddaway, Inc.*, 114 F.4th 1080 (9th Cir. 2024), and similar cases is misplaced, as those cases involved unsophisticated individuals in factual circumstances dissimilar to this case. *See, e.g., Ronderos*, 114 F.4th 1080 (applicant for position of line haul manager pushed to sign agreement immediately and on site); *OTO*, 8 Cal. 5th 111 (agreement presented to low level worker at his workspace with expectation that he sign it immediately).

### 2. Asserted Violation of SOX

Luong contends that the arbitration agreement is unenforceable because it encompasses all claims arising out of his employment, including his SOX claim, and thus runs afoul of SOX's prohibition against arbitration agreements. The relevant provision of SOX reads as follows: "No predispute arbitration agreement shall be valid or enforceable, if the agreement requires arbitration of a dispute arising under this section." 18 U.S.C.A. § 1514A(e)(2). According to Luong, that provision invalidates the arbitration agreement at issue here entirely, with respect to both his SOX claim and his non-SOX claims.

Luong relies on out-of-circuit decisions from the District of Puerto Rico and the Western District of Arkansas to support his position. *See Stewart v. Doral Fin. Corp.*, 997 F. Supp. 2d 129 (D.P.R. 2014); *Laubenstein v. Conair Corp.*, No. 5:14-CV-05227, 2014 WL 6609164 (W.D. Ark. Nov. 19, 2014). Those decisions applied § 1514A(e)(2) to invalidate arbitration agreements as to both SOX claims and non-SOX claims where the claims arose from the same facts, reasoning that under those circumstances allowing arbitration of the non-SOX claims would frustrate the purpose of § 1514A(e)(2).

9

1   Defendants argue that Luong's reading of the SOX prohibition against arbitration
2   agreements is too broad, relying primarily on a California district court decision that rejected the
3   approach of *Stewart* and *Laubenstein*. *See Endresen v. Banc of California, Inc.*, No. SACV 18-
4   00899-CJC(DFMx), 2018 WL 11399501, at *3 (C.D. Cal. Sept. 20, 2018). The *Endresen* court
5   emphasized that the prohibition on arbitration set forth in § 1514A(e)(2) is expressly limited to
6   claims arising under SOX, and that "[d]enying arbitration on some claims because there are also
7   non-arbitrable claims ignores the FAA's 'emphatic federal policy' in favor of arbitration." *Id*.
8   The *Endresen* court acknowledged that the FAA may be overridden by a clear congressional
9   command, but concluded that SOX does not contain a clear congressional mandate that would
10  extend § 1514A(e)(2) beyond the scope of claims brought under SOX. *See id*.

11  This Court agrees with the reasoning of *Endresen*, specifically the conclusion that it would
12  be improper to refuse to enforce a valid arbitration agreement as required under the FAA, absent a
13  clear congressional mandate. In this Court's view, a judicial determination that the purpose of
14  SOX's anti-arbitration provision might be frustrated by compelling arbitration of non-SOX claims
15  arising from the same facts is an insufficient basis to override the FAA. Moreover, this Court
16  agrees with the *Endresen* court's observation that "it is not clear why arbitration of non-SOX
17  claims would frustrate any purpose of section 1514A, since Plaintiff's SOX claim still remains
18  before the court." *Endresen*, 2018 WL 11399501, at *3

### C. The State Law Claims Fall Within the Scope of the Arbitration Agreement

There is no dispute that Luong's state law claims for retaliation, which clearly arise out of his employment and termination, fall within the scope of the arbitration agreement, and the Court finds that the state law claims do fall within the scope of the agreement. Accordingly, the Court will grant Defendants' motion to compel arbitration of Luong's state law claims.

### D. A Stay of this Action, Including the SOX Claim, is Warranted

Defendants move to stay this action, including the SOX claim, pending arbitration of the state law claims. Luong opposes a stay of litigation of his SOX claim, asking the Court to allow his SOX claim to proceed in this forum while his state law claims proceed in arbitration.

Where a complaint asserts both arbitrable and non-arbitrable claims, the defendants are not

United States District Court
Northern District of California

1   entitled to a stay of the non-arbitrable claims as of right, but the district court may in its discretion
2   stay the non-arbitrable claims "under the powers to control its own docket and to provide for the
3   prompt and efficient determination of the cases pending before it." *Leyva v. Certified Grocers of*
4   *California, Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979). "A stay should not be granted unless it
5   appears likely the other proceedings will be concluded within a reasonable time in relation to the
6   urgency of the claims presented to the court." *Id*. at 864.  In *Leyva*, the Ninth Circuit found that
7   "[i]t would waste judicial resources and be burdensome upon the parties if the district court in a
8   case such as this were mandated to permit discovery, and upon completion of pretrial proceedings,
9   to take evidence and determine the merits of the case at the same time as the arbitrator is going
10  through a substantially parallel process." *Id*.

Other courts in this district have found it appropriate to stay a SOX claim pending arbitration of non-SOX claims arising from the same facts.  *See, e.g., Anderson v. Salesforce.com, Inc.*, No. 18-CV-06712-PJH, 2018 WL 6728015, at *3 (N.D. Cal. Dec. 21, 2018).  The *Anderson* court found it "appropriate to stay plaintiff's SOX claim and the entire action because plaintiff's claims all arise from the same conduct and because allowing the arbitration to resolve will simplify issues of law or questions of fact in future proceedings." *Id*.  As in *Anderson*, Luong's non-arbitrable SOX claim and arbitrable state law claims arise from the same conduct, and staying litigation of the SOX claim pending arbitration of the state law claims may simplify questions of fact and/or issues of law in future proceedings.

Luong argues that such simplification would prejudice his ability to litigate his SOX claim, because discovery in the arbitration will be far more limited than discovery available in district court.  He asserts that there is a substantial risk that his SOX claim will be subject to issue preclusion arising from an adverse arbitration decision on the non-SOX claims.  Luong urges the Court to deny the requested stay of the SOX claim, citing an out-of-circuit decision in which the court found it appropriate to allow the SOX claim to be litigated in parallel with arbitration of the non-SOX claims.  *See Vuoncino v. Forterra, Inc.*, No. 3:21-CV-01046-K, 2022 WL 868274, at *8 (N.D. Tex. Feb. 28, 2022), *report and recommendation adopted*, No. 3:21-CV-01046-K, 2022 WL 865893 (N.D. Tex. Mar. 22, 2022).

11

While Luong's prejudice argument has some facial appeal, he has not demonstrated that he is likely to be prejudiced by any limitations in the arbitration proceeding. His prejudice argument is premised on the assumption that he will not prevail in arbitration, and thus will be denied a fair opportunity to litigate his SOX claim because he will be bound by an adverse arbitration decision based on limited discovery. Luong's apparent assumption that he will lose at arbitration is not founded on any record evidence. Moreover, when the Court inquired at the hearing whether the arbitrator's decision on the non-SOX claims would be binding on this Court during subsequent litigation of the SOX claim, Luong's counsel was unable to direct the Court to any controlling authority. Accordingly, the Court finds Luong's argument of prejudice to be purely speculative.

The Court in the exercise of its discretion finds that a stay of this litigation, including the SOX claim, is warranted for reasons of economy and efficiency. Luong's SOX claim arises from the same facts as his non-SOX claims, and under those circumstances allowing this case to proceed in parallel to the arbitration likely would result in a waste of judicial resources and imposition of an undue burden on Defendants. Important to this decision is the representation of Defendants' counsel at the hearing that the parties are poised to commence arbitration as soon as the Court issues its ruling. The Court will require the parties to begin arbitration within 60 days after this order.

## IV.  ORDER

(1)   Defendants' motion to compel arbitration and stay action is GRANTED. Plaintiff's state law claims (Claims 2 and 3) are hereby COMPELLED to arbitration. This action, including Plaintiff's SOX claim (Claim 1), is STAYED pending arbitration of the state law claims.

(2)   The parties SHALL commence arbitration within 60 days after the date of this order and SHALL file a joint status report by February 3, 2025, advising the Court of the status of arbitration.

(3)   This order terminates ECF 17.

Dated: November 4, 2024

_____
BETH LABSON FREEMAN
United States District Judge